IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KENYA LASCENTA HACKETT, <br><br>Plaintiff, <br><br>v. <br><br>NANCY A. BERRYHILL, <br>COMMISSIONER OF SOCIAL <br>SECURITY ADMINISTRATION, <br><br>Defendant. | CIVIL ACTION NO. 9:17-1252-CMC-BM <br><br><br>**REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on August 9, 2013 (protective filing date), alleging disability as of August 7, 2013 due to seizures, severe migraines, hypertension, ankle swelling, leg cramping, back pain, her mental status/depression, and diabetes. (R.pp. 53, 55, 254-264). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 5, 2016. (R.pp. 41-87). The ALJ thereafter denied Plaintiff's claims in a decision issued May 11, 2016. (R.pp. 22-33). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).



Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



2

disagree with such decision as long as it is supported by 'substantial evidence.'" <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

**<u>Background</u>**

The record shows that Plaintiff, who was forty-three years old on her alleged disability onset date, has a high school diploma and a certified nursing assistance certificate, and past relevant work as a packer and as a certified nursing assistant for 16 years. (R.pp. 49-51, 53). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in this case the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of seizures, migraines, and an affective disorder, she nevertheless retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, restricted to not using moving machinery or having exposure to unprotected heights; simple, routine, and repetitive tasks, a work environment free of fast-paced production requirements involving only simple, work-related decisions, and with few, if any, work place changes. The ALJ also found that Plaintiff was capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting. (R.pp. 27-28). Although the ALJ found that Plaintiff could not perform her past relevant work with these

---

[1] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. § 404.1521(a); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142 (1987).



3

limitations, he obtained testimony from a vocational expert and found at step five that Plaintiff could still perform other jobs existing in significant numbers in the national economy, and was therefore not disabled during the period at issue. (R.pp. 31-32).

Plaintiff asserts that the ALJ erred in reaching this decision by failing to ask the VE whether his testimony conflicted with the Dictionary of Occupational Titles (DOT),[2] by failing to account for time Plaintiff would be off-task in his RFC finding, by assigning Plaintiff an RFC that was inconsistent with the testimony of the VE and his very own finding that Plaintiff has a severe impairment of seizure disorder, and by failing to consider and address the reasons Plaintiff was not compliant with taking her seizure medication, including side effects and financial issues. After a careful review and consideration of the evidence and arguments presented, the undersigned is constrained to agree with the Plaintiff that the ALJ failed to properly consider and address the reasons Plaintiff was not fully compliant with her seizure medication, and that this case must therefore be reversed and remanded for further consideration of Plaintiff's claims.

**Relevant Medical Records and History**

While the case file contains voluminous medical records, the parties narrowed the facts and issues discussed to the particular claims presented. Likewise, since the undersigned finds that the ALJ failed to properly discuss and evaluate Plaintiff's non-compliance with her seizure medication, the records discussed herein are centered on that issue.

---

[2]The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). "[T]he DOT, in its job description, represents approximate *maximum* requirements for each position rather than the range." See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998).



The record reflects that in February 2013, Plaintiff was seen by medical providers at Regenesis Community Health Center and was instructed at that time not to drive. (R.p. 467). In June 2013, Plaintiff reported she was experiencing one seizure every two weeks, and that she was not taking Depakote as prescribed at that time because it was causing drowsiness. (R.p. 470). Subsequently, on August 11, 2013, Plaintiff was counseled by Dr. Toni Williams that she could not take her medications and do her job or drive. The same medical records note that a letter was faxed to the Department of Motor Vehicles to revoke her driver's license. (R.p. 474). Plaintiff's function report states that Plaintiff's medication makes her feel "groggy" and "out of it". (R.p. 300). These records roughly correspond with Plaintiff's alleged disability onset date of August 7, 2013. Thereafter, in September 2013, Plaintiff reported to Dr. Williams that she had quit her job because she could not simultaneously perform her job duties and take her seizure medication. She noted that Plaintiff reported that she had not been able to take her medication as directed before because the side effects kept her from performing the duties of her job. (R.p. 484). Even so, Dr. Williams instructed her to take her medication as prescribed. (R.p. 486).

On September 30, 2013, state agency medical consultant Dr. Dale Van Slooten completed a residual functional capacity (RFC) assessment of the Plaintiff and found her to be only partially credible. Dr. Van Slooten stated that Plaintiff "alleges ongoing seizures and has been noted to be noncompliant with treatment and medication. She indicates seizures are controlled with medication when she takes it." Dr. Van Slooten opined that Plaintiff had no physical limitations except that she should avoid exposure to hazards because of her seizures. With respect to any mental limitations, he opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions. As for Plaintiff's ability to maintain sustained concentration and



5

persistence, Dr. Van Slooten opined that Plaintiff was moderately limited in her ability to carry out detailed instructions. He further opined that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R.pp. 94-97). A second state agency medical consultant, Dr. Larry Caldwell, completed an RFC assessment for the Plaintiff on March 27, 2014, and reached the same conclusions as Dr. Van Slooten. (R.pp. 124-126).

On March 24, 2014, Plaintiff reported to Dr. Herold Nazon of Regenesis that she had been out of seizure medication since September 2013 "due to loss of her medical coverage." As a result, she reported seizure activity three to four times monthly. Dr. Nazon refilled her prescription. (R.pp. 870-871). On September 24, 2014, Plaintiff reported she was taking her Depakote, and was experiencing no dizziness, vertigo, fainting, or convulsions. (R.p. 864). However, on October 14, 2014, Plaintiff went to Spartanburg Regional Emergency Center because of dizziness, and Dr. Peter Braun determined an elevated Depakote level likely caused the symptoms. (R.pp. 811, 813). Dr. Braun instructed Plaintiff to skip one day of medication, and to then reduce her medication. (R.p. 822). By October 20, 2014, Plaintiff reported to her Regenesis medical providers that she was symptom-free, although she also reported her history of recurrent seizures. Regenesis kept her on the same Depakote dose of one pill per day. (R.pp. 862-863).

On November 6, 2014, Plaintiff reported to Dr. Carol Nichols of Carolina Neurology of Spartanburg, LLC, that she experienced seizures one to two times per week. (R.p. 769). However, on November 20, 2014, Plaintiff reported to her Regenesis medical providers that she was



only taking one Depakote per day, was feeling good as a result, that her Depakote "does work", and that she had had "no recent seizure activity." (R.p. 860).

On January 20, 2015, Plaintiff reported to Regenesis that she was out of medication, and had had a seizure in her sleep the previous night. (R.p. 858). On August 20, 2015, Plaintiff reported to Regenesis that she had lost her Medicaid and been off her medication for one month and was experiencing seizures, but that she was now back on her medications. (R.p. 849). Regenesis advised her to continue her current treatment, as "her conditions were well controlled when on meds regularly." (R.p. 851). However, on August 23, 2015, Plaintiff returned to the hospital because of dizziness. Plaintiff reported that she had had a seizure six days earlier after not taking her seizure medication for about one month due to an insurance complication. (R.pp. 823-824). Thereafter, Plaintiff got a refill of her Depakote prescription, following which her Depakote level was normal. (R.pp. 823, 833). On October 28, 2015, Plaintiff followed up at Regenesis, reporting that she had been stable with her seizures since her last visit, and had no dizziness, vertigo, fainting, or convulsions. (R.p. 845).

On January 18, 2016, Plaintiff was examined by Dr. John R. Absher, a neurologist. Plaintiff reported having had four episodes during the past month, all during her sleep. (R.p. 882). Dr. Absher continued Plaintiff on Depakote. (R.p. 884). On January 28, 2016, Plaintiff followed up at Regenesis. (R.p. 896). Her Depakote prescription was continued. (R.p. 898). On March 15, 2016, Plaintiff told Dr. Caleb Loring, IV, Psy.D., that she experienced seizures about three times per month despite treatment (R.p. 902), but on March 18, 2016, Plaintiff reported to Dr. Absher that she had had only one seizure since her last visit in January 2016. (R.p. 906).

7



**Discussion**

The ALJ found that Plaintiff's seizures were a severe impairment; (R.p. 24); a finding supported by the record in this case. Plaintiff testified that her driver's license was revoked due to her seizure disorder, testimony confirmed by Dr. Williams. (R.pp. 50, 474). Plaintiff testified that she takes Mobic for pain relief and Depakote for her seizure disorder, and that she cannot work due to her seizures, as well as because of her severe migraines, hypertension, ankle swelling, leg cramping, back pain, her mental status/depression (Plaintiff testified that she had attempted suicide six times), and diabetes. (R.pp. 53-56). Plaintiff testified that her seizures last 10 to 15 minutes, following which she feels exhausted the rest of the day and into the next day. (R.pp. 61-62). At the time of the hearing on April 5, 2016, Plaintiff testified that her seizure activity had increased to 3 to 4 times per week, even though she was then compliant with her seizure medications.[3] (R.p. 62). Plaintiff testified that she had a seizure when she was working as a nursing assistant and was told that she was a liability because she could hurt a patient or herself, and that her doctor told her to stop working and revoked her license. (R.pp. 64-65). Plaintiff worked in her last position as a packer at Adidas until 2013, but stopped because her doctor told her to due to her seizure activity. (R.p. 51). Moreover, Plaintiff's daughter testified that she sees her mother every day and that she has seizures 3 to 4 times per week. Her daughter further testified that Plaintiff's seizures last approximately 10

---

[3]While the Defendant attempts to contradict this testimony by pointing to Plaintiff's February 2014 seizure report, wherein she stated that she experienced seizures 5 times a month; see Defendant's Memorandum in Support of Summary Judgment, p. 4; see also (R.p. 325); the February 2014 report notes that Plaintiff stated that she had seizures approximately 5 times a month when taking her seizure medication, but 8 times a month without taking her medication. (R.p. 325). Moreover, this report was from over 2 years prior to the hearing, and both Plaintiff and her daughter specifically testified that her seizure activity had increased since that time. (R.pp. 62, 73).



to 15 minutes, that she loses consciousness during these episodes, and that her mother's seizure activity had worsened since the first of the year. (R.pp. 72-73).

The Vocational Expert testified that based on Plaintiff's description of her seizures they would be considered grand mal, and that there would not be an acceptable number of seizures a month at which Plaintiff would be employable. (R.pp. 82-83). However, the ALJ did not make a finding that Plaintiff's seizure activity was less than one a month, or indeed any specific finding about the frequency or severity of her seizures. Rather, he found that Plaintiff does not have seizures when she is compliant with her medications. (R.pp. 28-29). Defendant argues that this finding is supported by substantial evidence in the case record because the medical evidence shows that Plaintiff experienced serious and frequent seizures only when she was not taking her medication as prescribed. See Defendant's Memorandum in Support of Summary Judgment, p. 15. However, Plaintiff argues that the evidence shows she would also have seizures even when taking her medication, and that the ALJ further erred by failing to consider and address the reasons Plaintiff was not fully compliant with her seizure medication regimen, to include financial difficulties and the side effects caused by her medication. Plaintiff notes that the ALJ repeatedly questioned the severity of Plaintiff's seizure symptoms based upon her noncompliance with medications; (R.pp. 25-26, 28-29); while pointing out that the ALJ failed to ask Plaintiff anything about compliance issues with her seizure medication on direct examination, and failed to discuss Plaintiff's testimony on cross-examination that she was not able to take her seizure medication at work due to it making her drowsy and further explained her compliance issues by stating that her Medicaid insurance was switched to family planning Medicaid and that this insurance would not pay for her seizure medication. (R.pp.


62-63). Plaintiff also argues that the ALJ minimized the significance of Plaintiff's seizure activity because of her compliance issues.

SSR 16-3p requires an ALJ to consider and address reasons for not pursuing treatment that are pertinent to an individual's case, determine whether the evidence supports the claimant's statements, and explain how they considered the claimant's reasons and explanations. <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, Social Security Ruling (SSR) 16-3p, Federal Registar Vol. 81, No. 57, page 15776, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p specifically requires that, where appropriate, an ALJ should consider the type, dosage, and side effects of a claimant's medications in reaching their decision.[4] <u>See also</u> <u>Hamilton v. Barnhart</u>, 158 Fed.Appx. 68 (9th Cir. 2005)[Where the record contains evidence supporting a Plaintiff's claims regarding side effects, side effects are a factor to be considered in the formulation of an RFC]. Here, Plaintiff testified that she could not take her medications because she was working around machinery, that her medications made her tired and drowsy which causes her to nap during the day, and that even though she had gotten her health insurance issues resolved and had been able to obtain and take her medication as prescribed for approximately six months, that she was still having three to four seizures a week. (R.pp. 59-63). This testimony is supported by records from Plaintiff's medical provider Nancy Harris, who noted on June 14, 2013, that Plaintiff did not take her Depakote as prescribed because it causes drowsiness. (R.p. 470). Harris' notes also state that Plaintiff "does not take her meds like

---

[4]SSR 16-3p superceded SSR 96-7p, effective March 16, 2016. <u>See</u> 2016 WL 1119029 (Mar. 16, 2016). This was shortly before the decision issued in this case. In any event, the standard for evaluating side effects of a claimant's medications is the same for both. <u>See</u> SSR 96-7p [RFC assessment must be based on all of the relevant evidence, including side effects of medications].



she is supposed to because she cannot use her meds and work machinery, makes her feel sleepy." (R.p. 472). While the ALJ noted in his decision that Plaintiff reported seizures every two weeks in August 2013 because she was not taking her medications, but that during her visit to Harris Plaintiff was prescribed Dapakote and agreed to take it as prescribed, those same medical notes also state that Plaintiff was counseled that she cannot take her meds and do her job or drive, and that Plaintiff understood these instructions and agreed. (R.pp. 28, 474).

The ALJ does not discuss or evaluate anywhere in his decision the issue of whether, or to what extent, Plaintiff suffers from side effects of medications, or the affect Plaintiff's medications might have on her ability to work. Jackson v. Colvin, No. 13-1560, 2014 WL 2154260, at * 1 (W.D.Wa. May 22, 2014)["An ALJ should consider all factors that might have a significant impact on an individual's ability to work, including side effects of medications"]. This was reversible error. Varney v. Secretary of HHS, 846 F.2d 581, 585 (9th Cir. 1987)["[I]f the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)"] *relief* modified, 859 F.2d 1396 (1988) [overruled by statute on other grounds in Bunnell v. Sullvan, 947 F.2d 341, 345-346 (9th Cir. 1991); Figueroa v. Secretary of HEW, 585 F.2d 551, 554 (1st Cir. 1978)[ALJ must make finding on appellate's claim regarding side effects of medication]; see also Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of the evidence must be sufficient to "assure [the court] that she considered the important evidence . . . [and to enable the court] to trace the path of her reasoning"]. As the ALJ did not address this issue, it does not appear to have been taken into account in determining Plaintiff's RFC. Davis v. Commissioner of Soc. Security, No. 09-12505,



11

2011 WL 1120030 at * 9 (E.D.Mich. Feb. 18, 2011)[Finding it unclear in ALJ's finding that Plaintiff's limitation to unskilled work accounted for her medication side effects which included drowsiness, dizziness, and the need to nap.], adopted by, 2011 WL 1120025 (E.D.Mich. Mar. 25, 2011). Therefore, this case should be reversed and remanded for consideration of the evidence and testimony relating to side effects of Plaintiff's medications, for a finding as to what side effects are documented and found to be credible, and how those side effects (if any) effect Plaintiff's RFC. Varney, 846 F.2d at 585 [Remanding case for the ALJ to either accept the claimant's evidence regarding side effects or make specific findings rejecting such evidence]; Jackson, 2014 WL 2154260, at * 2 ["ALJ was required to reject [claimant's] side effects testimony by providing specific findings stating clear convincing reasons for doing so"].

Moreover, in her February 2014 seizure questionnaire, Plaintiff stated that she had not seen her doctor or taken her seizure medication due to not having medical insurance. (R.p. 326). She also represented that she had applied for Medicaid and had been told that her application was still being processed. (R.p. 326). The ALJ stated in his decision that in March 2014 Plaintiff was again not taking her seizure medication and was reporting having three to four seizures a month. (R.pp. 29). However, that same record noted that Plaintiff was "here only because she ran out of refills due to loss of her medical coverage . . . ." (R.p. 870). After discussing a November 2014 visit, the ALJ noted "[s]imilarly, in August 2015, the [Plaintiff] had not taken seizure medication in over a month, and experienced seizures." (R.p. 29). However, the medical notes from that visit state Plaintiff "lost her medicaid and she did not have meds for few days." (R.p. 849). SSR 16-3p provides that,



12

if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individuals symptoms inconsistent with the medical evidence in the record on this basis ***without considering possible reasons he or she may not comply with treatment*** or seek treatment consistent with the degree of his or her complaints.

See SSR 16-3P, 2016 WL 1119029 at * 8 (Mar. 16, 2016)[Emphasis Added].

In this case, the ALJ found that Plaintiff's testimony regarding the frequency of seizure activity and alleged medication compliance was not entirely consistent with the medical evidence and subjective statements in the record, stating that "[w]hile the medical evidence shows that the [Plaintiff] experiences seizures, there are inconsistencies regarding the frequency and adherence to medication." (R.p. 31). However, there is no indication in the decision that the ALJ considered the evidence showing that Plaintiff may not have been compliant with the recommended treatment because she at times had difficulty paying for her medications. See SSR 16-3p, 2016 WL 1119029 at * 9 (Mar. 16, 2016)["We will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them."]. Rather, the ALJ failed to reference or even acknowledge the repeated references in the medical notes that Plaintiff was not taking her medication because of financial hardships.

The Fourth Circuit has held that a plaintiff "may not be penalized for failing to seek treatment she cannot afford." See Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). Where an ALJ's analysis of a claimant's credibility both relies on her non-compliance with medical treatment and fails to adequately address whether she could afford to pay for that treatment, remand is warranted. Cf. Dozier v. Colvin, No. 14-29, 2015 WL 4726949 at * 4 (D.S.C. Aug. 10,



13

2015)(quoting Gadsden v. Colvin, No. 12-2530, 2014 WL 368216, at * 4 (D.S.C. Feb. 3, 2014)); see also Cagle v. Astrue, No. 09-3250, 2011 WL 322554 at * 4 (D.S.C. Jan. 28, 2011)["As the Fourth Circuit noted in Lovejoy, 'it flies in the face of the patent purpose of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'"]; Seabeneck v. Astrue, No. 09-2480, 2011 WL 31339 at ** 2-3 (D.S.C. Jan. 5, 2011)[A claimant cannot be penalized for failing to seek treatment she cannot afford]. Since the ALJ used Plaintiff's non-compliance to lessen her credibility, the decision should be reversed and remanded for the ALJ to make factual findings regarding Plaintiff's financial situation and its impact on her ability to comply with recommended medical treatment. Additionally, to the extent that the ALJ continues to find that Plaintiff's lack of compliance lessens her credibility, the ALJ should refer specifically to the evidence that informs his conclusions without penalizing Plaintiff for failing to comply with treatment that she can not afford.

Finally, with respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

**Conclusion**

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for reevaluation



14

of the evidence as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 22, 2018
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).